UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PEARL M. WILSON,                      )
                                      )
            Plaintiff,                )
                                      )
      v.                              )    No. 4:09 CV 1714 DDN
                                      )
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
            Defendant.                )

**MEMORANDUM**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Pearl M. Wilson for disability insurance benefits under Title II of the Social Security Act. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 7.) For the reasons set forth below, the ALJ's decision is remanded for further development of the record.

**I. BACKGROUND**

Plaintiff was born on October 28, 1951. (Tr. 20.) She attended school through the eleventh grade. (Tr. 20-21.) She is 5'6" tall and weighs 134 pounds; she is married and lives with her husband in Newburg, Missouri. (Tr. 77.) She last worked as a cashier at a college bookstore in 2002, checking out merchandise for customers and replacing merchandise onto shelves. (Tr. 79, 88.)

Plaintiff applied for disability insurance benefits on March 28, 2007, alleging she became disabled on October 1, 2002 due to pain in her feet, lower back, and left hand. (Tr. 78.) Plaintiff received a notice of disapproved claims dated May 14, 2007, and filed a request for a hearing on May 29, 2007. (Tr. 30-34, 35.) On December 29, 2008, she amended her onset date of disability to October 28, 2006, the date she turned 55 years of age. (Tr. 112.) After a hearing on January 21,

2009, the Administrative Law Judge (ALJ) denied benefits on April 7, 2009. (Tr. 9-17, 18-25.) On August 25, 2009, the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4.)

## II. MEDICAL HISTORY

**Work and Income**

From 1986 to 1999, plaintiff worked as a cook at a school, seven hours per day, five days each week, earning between $3200 and $8200 per year. (Tr. 68, 87, 90.) When she worked as a department store manager between 1998 and 2001, seven hours per day, five days each week, her income was between $7500 and $12,500 per year. (Tr. 68, 87, 89.) During her last position as a cashier at a bookstore during part of 2001 and 2002, plaintiff worked four hours per day, five days per week, earning $7645 and $834.64 each year, respectively. (Tr. 68, 87, 88.)

As a cook, plaintiff reported that she lifted large pots of food weighing 50 pounds or more between 1/3 and 2/3 of the workday, and stood for about six hours per day. (Tr. 90.) As a department store manager, she reported that she placed clothes from changing rooms back onto the sales floor, lifted 50 pounds or more between 1/3 and 2/3 of the workday, and stood and walked for six hours each day. (Tr. 89.) As a bookstore cashier, plaintiff reported that she frequently lifted less than 10 pounds, walked and stooped one hour, stood four hours, handled big and small objects, and wrote, typed and handled small objects for four hours each day. (Tr. 88.)

**Medical History**

On March 29, 1996, plaintiff had surgery to remove bunions and to correct hammertoe deformities in both of her feet. (Tr. 231-34.) These medical procedures included: a Keller bunionectomy[1] to correct hallux

---

[1]A bunion is a localized swelling on the first metatarso-phalangeal joint (joint at the end of the long bone of the big toe); a Keller bunionectomy is an excision of a portion of the long bone of the big toe. Stedman's Medical Dictionary, 219, 1176 (25th ed., Williams & Wilkins, 1990).

valgus[2] deformity; an Austin osteotomy[3] to correct metatarsus primus varus[4] deformity; fifth metatarsal head resection on both feet; arthroplasty[5] on the second and fifth toe of both feet; extensor capsulotomy on the second, third, fourth and fifth toes of both feet; and a flexor set capsulotomy on the third and fourth toes of both feet. (Tr. 231.) The surgeon's report noted that Plaintiff tolerated the procedure well, and once cleared in recovery by anesthesia, she was discharged in satisfactory condition. (Tr. 233-34.)

Eleven days later, on April 10, 1996, plaintiff was admitted to Phelps Medical Center complaining of shortness of breath and chest discomfort. (Tr. 224.) Though her heart was regular in rate and rhythm, a nonproductive cough was present, breath sounds were coarse with inspiratory rhonchi[6] and prolonged inspiratory wheeze, and plaintiff had chest tenderness to touch. (Id.) The note also stated that plaintiff smokes one to one and one-half packs of cigarettes per day, and had pneumonia several years prior. (Id.) She suffered from significant hypoxemia, which improved with supplemental oxygen, antibiotics and steroids. (Tr. 198.) Similar to her March 22 chest x-ray, an April 11 x-ray report noted "moderate, progressive, nonspecific bilateral interstitial disease" that is most likely acute inflammatory airways disease. (Tr. 220.) An April 12 progress report noted plaintiff was able to walk in the hall with minimal shortness of breath, and that her shortness of breath with wheezing was consistent with chronic obstructive pulmonary disease worsening in a long-term smoker. (Tr. 212.) On April 15, plaintiff's podiatric surgeon noted she had no pain with guarding of the foot or the foot surgery, and that from a podiatric standpoint, she was doing very well. (Tr. 206.) A discharge

---

[2]Hallux valgus is a deviation of the tip of the big toe toward the outer side of the foot. Id. at 681.

[3]An osteotomy is a cutting of a bone. Id. at 1110.

[4]Metatarsus primus varus is a deformity in which the portion of the foot between the instep and the toes is rotated inward, so that the bottom of the foot faces the midline of the body. Id. at 955.

[5]An arthroplasty is the restoration of a joint. Id. at 136.

[6]An added sound with musical pitch when breathing. Id. at 1361.

- 3 -

report of April 16 noted final diagnoses of respiratory distress, chronic obstructive pulmonary lung disease, bronchitis and inflammatory airways disease. (Tr. 197.) She was instructed to take Prednisone, Bactrim, Motrin, Proventil, and Atrovent, and was put on home oxygen until deemed unnecessary.[7] (Tr. 197, 200.) Neither her activities nor her diet were restricted. (Tr. 197.)

In September of 2001, plaintiff visited Dr. David's Family Clinic complaining of pain in her right foot. Notes dated September 10, 2001 indicate that a referral appointment for plaintiff to see a podiatrist was canceled due to lack of insurance coverage. (Tr. 141.) A July, 2004 visit indicates plaintiff was still receiving regular medications for issues caused by smoking. Her feet were examined again by the clinic in March of 2007. (Tr. 139-41.)

On April 28, 2003, plaintiff was referred for a bone density study at Phelps Medical Center, which showed osteopenia[8] resulting in a two and one-half times increased relative fracture risk. (Tr. 189.) Preventive therapy augmented with additional medication was recommended. (Id.)

On February 5, 2008, plaintiff submitted a patient care record and answers to interrogatory questions from Dr. Donald James, D.O. to the Office of Disability and Adjudication Review, accompanied by a cover letter from counsel. The patient care record, dated June 26, 2007, indicates plaintiff complained of numbness and tingling in her left hand and fingers, blood pressure in the low 80's and 50's, a periodically low pulse, blurred vision and pinched nerves. (Tr. 249.) Her blood pressure at the visit was 100/50 and her pulse was 80. A physical examination of plaintiff's chest showed her heart normal in rate and rhythm, and no S3-S4 murmurs. Dr. James noted decreased function to the left wrist, loss of finger function, skin discoloration and

---

[7]Prednisone reduces symptoms from allergic-type reactions and is used to treat breathing problems; Bactrim is used to treat respiratory infections; Motrin is a pain reliever; Proventil treats acute attacks of shortness of breath; and Atrovent treats breathing problems generally. WebMD, http://www.webmd.com/drugs/index-drugs.aspx (last visited July 28, 2010).

[8]Osteopenia is decreased bone density. Stedman's at 1110.

- 4 -

inflammation.⁹ (Tr. 249-50.) Plaintiff's lungs sounded clear, bowel sounds were normal, abdomen was soft and tender, and a motor and sensory examination was normal. (Tr. 250.) The record also noted plaintiff's current medications as Plavix, Vicodin, Clonazepam and ASA.¹⁰ (Tr. 249.)

The interrogatories asked Dr. James to rate plaintiff's limitations that would have been due to her foot problems prior to December 31, 2006. In his January 23, 2008 answer, Dr. James noted that he had been treating plaintiff since June 26, 2007. (Tr. 244.) Dr. James stated that prior to December 31, 2006, plaintiff would have been able to lift or carry five pounds for up to 1/3 of an eight-hour workday, stand and walk continuously for five minutes, and sit continuously for three hours. (Tr. 246.) Plaintiff would never have been able to climb, balance, stoop or kneel, and should have been able to crouch or bend occasionally. She would have had limited ability to reach and handle, while retaining unlimited ability to finger, feel, see, hear and speak. (Tr. 247.) Dr. James stated that the clinical symptoms generating these limitations were plaintiff's hammertoes and bunions, and that this ability assessment included consideration of plaintiff's subjective complaints of pain and discomfort. Dr. James indicated that assuming a reclining and a supine position up to thirty minutes a day, one to three times per day, and elevating her legs two to three feet, one to three times per day while sitting were necessary to help plaintiff control her existing pain. (Tr. 248.)

**Testimony at the Hearing**

On January 21, 2009, plaintiff testified before the ALJ. (Tr. 18-25.) She stated that the last grade she completed was the eleventh grade and she did not earn a high school diploma. (Tr. 20.) The last job plaintiff held was approximately twenty hours per week as a cashier at a college bookstore, where she lifted "very heavy items," and stood

---

⁹Injury to plaintiff's left wrist, which occurred in a fall in early 2007, is not at issue here. (Tr. 16, 119-146.)

¹⁰Plavix treats heart conditions; ASA (acetaminophen) and Vicodin are pain relievers; Clonazepam calms nerves and treats panic attacks. WebMD, http://www.webmd.com/drugs/index-drugs.aspx (last visited July 28, 2010).

a significant amount of time. (Tr. 21.) Her job as a cook at a school involved a lot of lifting and standing, and her position at a clothing store required standing most of the time. (Tr. 21-22.) Plaintiff later stated that she has never done a lot of lifting. (Tr. 23.)

Plaintiff had surgery on her feet in 1996 to remove bunions and correct hammertoes. She testified the hammertoes and bunions returned after the surgery and after she stopped working in 2003. (Tr. 22.) Plaintiff testified that in 2006, it was painful for her to stand. She could stand a maximum of thirty minutes, and sit for forty-five minutes before her feet bothered her again and she would have to move them. To soothe the pain in her feet, plaintiff sits in her recliner, which in 2006 she estimated she did four to five hours per day. She also stated that she could not lift and has never really done a lot of lifting. (Tr. 23-24.)

Plaintiff testified that she had problems with her breathing and shortness of breath, for which she was hospitalized in 1996, and that those problems persisted in 2006; she later stated that she did not have difficulties with shortness of breath in 2006. (Tr. 24-25.)

### III.  DECISION OF THE ALJ

The ALJ followed the five step procedure provided by 20 C.F.R. § 404.1520(a)(4)(i)-(v). At Step One, the ALJ found that plaintiff had not engaged in substantial gainful work activity from her amended disability onset date of October 28, 2006 through her date last insured of December 31, 2006. At Step Two, the ALJ found that plaintiff suffered from degenerative changes to her feet with hammertoes and bunions, and smoking-related breathing problems, and that these impairments were severe. At Step Three, the ALJ found that plaintiff's impairments did not meet or medically equal one of the listed impairments, noting that plaintiff was able to walk effectively without using a crutch or a cane. (Tr. 14.)

Before moving to Step Four, the ALJ determined plaintiff's residual functional capacity (RFC) based on all available evidence presented in the record. See 20 C.F.R. § 404.1520(e); § 404.1545. The record showed

that plaintiff engaged in substantial gainful activity from 1997 to 2002, which was after the 1996 surgery on her feet.

Plaintiff reported that she stopped working in 2002 because of the pain in her feet. However, the ALJ found no evidence that the condition of plaintiff's feet following her surgery while she performed substantial gainful work activity was appreciably different from their condition between the date she stopped working and her date last insured.

The ALJ discredited Dr. James' January 23, 2008 letter because it was written two years after plaintiff's date last insured. Furthermore, it did not address the issue of how the condition of plaintiff's feet, when she engaged in substantial gainful activity between 1997 and 2002, was different from their condition when she alleges she was unable to work. The ALJ also found that plaintiff's statements concerning the limiting effects of her symptoms were not credible because the record contained no evidence that plaintiff sought medical attention after she believed her feet had deteriorated to the point that she could no longer work. (Tr. 15.) From this evidence, the ALJ concluded that while plaintiff's impairments could reasonably cause the symptoms plaintiff alleges, plaintiff's claims regarding the limiting effects of these symptoms were not supported by the record.

Lastly, the ALJ found that plaintiff's smoking-related breathing problems were controlled with medication and did not limit her ability to work before her date last insured; and that her wrist fracture occurred after [sic] her date last insured. (Tr. 16.); see supra p. 5 FN9. The ALJ found that plaintiff retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 CFR 404.1567(b). (Id.)

Moving to Step Four, the ALJ concluded that plaintiff has the RFC to perform the requirements of her past relevant work as a store cashier and as a department store manager. The ALJ found that plaintiff's earnings records reflect that her work as a department store manager following the surgeries on her feet constituted substantial gainful work activity. The ALJ regarded plaintiff's claim that she lifted objects as much as fifty pounds as a department store manager as not credible,

since the work of a retail store manager is light work as defined by the Dictionary of Occupational Titles. Having found that plaintiff retained an RFC to perform the full range of light work, the ALJ concluded that plaintiff had not met her burden of showing that she was unable to perform her past relevant work before her last date insured. The ALJ held that plaintiff was not under a disability at any time from her first alleged disability date of October 1, 2002 through December 31, 2006, her date last insured. (Id.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942.

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers

from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work. Id. The claimant bears the burden of demonstrating she is no longer able to return to her past relevant work. Id. If the Commissioner determines the claimant cannot return to past relevant work, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

In this case, the ALJ determined that plaintiff had severe impairments that did not match a listed impairment, and that she had failed her burden of showing that she could not perform her past relevant work. The ALJ concluded plaintiff was not under a disability between her alleged disability onset date and her date last insured.[11]

## V. DISCUSSION

Plaintiff argues the ALJ's findings were not supported by substantial evidence. (Doc. 12 at 7.) Specifically, plaintiff alleges: (a)(i) that the ALJ's finding that plaintiff retained the RFC to perform the full range of light work through her date last insured was not supported by substantial evidence, and relatedly, (ii) that the ALJ improperly discredited Dr. James' 2008 medical opinion; and (b) the ALJ's finding that plaintiff could return to her past relevant work was conclusory. (Id. at 10-12.)

The ALJ's RFC finding is not supported by substantial evidence. Defendant contends the ALJ found that objective medical evidence indicated the condition of plaintiff's feet and legs remained "relatively stable" during the time between her surgery in 1996 and her date last insured. (Doc. 15 at 6.) Defendant argues that this finding,

---

[11]While the ALJ concluded at Step Four that plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 1, 2002, her first alleged disability onset date, to December 31, 2006, her date last insured, defendant acknowledges that the relevant period of inquiry begins with plaintiff's amended disability onset date of October 28, 2006. (Doc. 15 at 2; Tr. 16, 78, 112.)

together with the ALJ's finding that plaintiff engaged in substantial gainful work activity at the light work exertional level from 1997 to 2001, formed a proper basis for the ALJ's conclusion that plaintiff retained the RFC to perform the full range of light work between October 28 and December 31 of 2006. (Id. at 7.) However, the ALJ did not make a positive finding regarding the condition of plaintiff's feet or legs during the relevant period of inquiry. Rather, he found that "medical records do not reflect that the condition of [plaintiff's] feet and legs during the years following her surgery when she worked full time and performed substantial gainful work activity was appreciably different from their condition up to her date last insured." (Tr. 15.) This is an insufficiency of evidence finding, rather than a positive finding that her feet and legs remained stable for ten years. The ALJ reasoned that because plaintiff engaged in substantial gainful light-work activity after her 1996 surgery to 2001, and no medical records in the transcript show that plaintiff's feet had subsequently deteriorated, plaintiff must have retained the same RFC as required by her previous work. (Tr. 15.)

Though evidence from outside the insured period can be used to shed light on a medical condition that existed during the relevant period of inquiry, an ALJ's finding concerning a claimant's RFC must be supported by some medical evidence. Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Guilliams v. Barnhart, 393 F.3d 798 (8th Cir. 2005). The medical records defendant references, to argue that the condition of plaintiff's feet remained "relatively stable," were dated just ten to sixteen days after the 1996 surgery on her feet. (Doc. 15 at 9; Tr. 197-98, 206, 218.) The transcript includes no medical records between the relevant dates of October 28 and December 31, 2006 that addressed treatment of, or pain management for, the condition of plaintiff's feet. The only medical records included in the transcript that comment on the condition of plaintiff's feet during the period of inquiry, those of Dr. James, were disregarded by the ALJ. (Tr. 15, 244-248.)

Social Security Administration hearings are non-adversarial, and the ALJ bears a responsibility to develop the record fairly and fully, independent of plaintiff's burden to prove her case and notwithstanding

the fact that plaintiff is represented by counsel. See Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (citing a number of sources describing the non-adversarial nature of social security hearings and the ALJ's duty to develop the record). Plaintiff's administrative hearing lasted seven minutes. (Tr. 20, 25.) Though the length of a hearing is not dispositive, it is a consideration. Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994). Only plaintiff testified, responding to questions posed only by her attorney. (Tr. 18-25.) Plaintiff testified that the hammertoes and bunions returned when she stopped working, and that by 2006, her feet hurt all the time when she was on them. (Tr. 22-23.) Neither her attorney nor the ALJ attempted to clarify or further substantiate her claim. See Battles, 36 F.3d at 45 ("Superficial questioning of inarticulate claimants or claimants with limited education is likely to elicit responses which fail to portray accurately the extent of their limitations" (quoting Lashley v. Secretary of Health & Human Serv., 708 F.2d 1048, 1052 (6th Cir. 1983))). No medical assessments were arranged by the ALJ, or testified to by witnesses or experts. See 20 C.F.R. § 404.1545(a)(3) (the Social Security Administration's responsibility to develop a complete medical record before making a "not disabled" determination includes re-contacting medical sources and arranging for consultative examinations). No inquiry was made into plaintiff's daily activities or capabilities during the relevant period. See Groeper v. Sullivan, 932 F.2d 1234, 1238-39 (8th Cir. 1991) (ALJ must specifically set forth claimant's physical and mental limitations and determine how those limitations effect the claimants RFC). Plaintiff's testimony that her hammertoes and bunions returned when she stopped working raises a genuine issue as to her capabilities during the relevant period. See Battles, 36 F.3d at 45 (where ALJ asked no questions and counsel's questioning failed to establish claimant's capacity to work, claimant's testimony concerning his disability was sufficient to raise an issue concerning his ability to engage in substantial gainful activity, requiring remand). Given plaintiff's uncontroverted testimony, the undersigned concludes that the ALJ failed to properly develop the record to determine the extent of

plaintiff's physical limitations, as required for a proper RFC determination.

The ALJ's discrediting of plaintiff's testimony concerning the limiting effects of her symptoms is not sufficiently supported. Social Security Ruling 96-7p, which the ALJ references to consider the extent to which plaintiff's symptoms can reasonably be consistent with objective medical evidence, prohibits an ALJ from drawing inferences from a claimant's failure to seek treatment of an impairment without considering any explanation offered, or contacting or further questioning the individual in order to determine whether there are good reasons for not seeking treatment. S.S.R. 96-7p, 1996 WL 374186, at *7 (Soc. Sec. Admin. July 2, 1996).

At the administrative hearing, plaintiff's attorney asked plaintiff what she does to relieve the pain in her feet. Plaintiff responded that she moves them, which, plaintiff indicated, does not actually relieve the pain, but helps in some way. (Tr. 24.) The ALJ did not attempt to clarify plaintiff's testimony or question her to determine whether she had good reasons for her apparent failure to seek medical treatment. Rather, from the lack of medical evidence in the record that would indicate plaintiff sought medical treatment near her alleged disability onset date, the ALJ inferred that plaintiff's statements concerning the limiting effects of her symptoms were not credible. (Tr. 15.)

The record does not reflect any other bases the ALJ used to discredit plaintiff's statements concerning her symptoms. (Id.) Social Security Ruling 96-7p provides specific examples of reasons claimants fail to seek treatment, one of which is that claimants may be unable to afford treatment or may not have access to free or low cost medical treatment. S.S.R. 96-7p at *8. A September 10, 2001 progress note from Dr. David's Family Clinic indicates that a podiatry referral was made for plaintiff after she complained of pain in her feet, but the appointment was later canceled because her insurance would not cover it. (Tr. 141.) Though this progress note is dated prior to plaintiff's amended alleged disability onset date of October 28, 2006, further inquiry may have shed some light on why the medical records do not show attempts by plaintiff to obtain medical treatment up to her date last insured. A claimant's statements concerning the limiting effects of her

symptoms are considered by an ALJ to determine the extent to which they limit the claimant's ability to do basic work activities, which in turn, informs the ALJ's RFC determination. Since the record reflects no other bases used by the ALJ to discredit plaintiff's statements about the limiting effects of her symptoms, the ALJ's findings regarding those statements improperly affected the his RFC determination.

Regarding whether the ALJ improperly discounted Dr. James' medical opinion, defendant contends that Dr. James' medical opinion is inconsistent with evidence that showed plaintiff's feet improved after surgery and that plaintiff was subsequently able to work. (Doc. 15 at 9-10.) However, as previously noted, the medical records on which defendant relies to argue that the condition of plaintiff's feet improved were dated just days after the 1996 surgery on her feet and ten years prior to the relevant period of inquiry. (Id. at 9; Tr. 197-98, 206, 218.) The record contains no evidence regarding the condition of plaintiff's feet during the relevant period of inquiry with which Dr. James' opinion could conflict. Furthermore, the ALJ found that plaintiff did not engage in substantial gainful activity between October 28 and December 31, 2006. (Tr. 14.) At the hearing, plaintiff testified that the hammertoes and bunions returned when she stopped working, in 2003. (Tr. 22.) Consequently, Dr. James' assessment of what plaintiff's limitations would have been prior to December 31, 2006 was consistent with plaintiff's testimony that the problems with her feet had returned and the ALJ's finding that plaintiff did not engage in substantial gainful activity during the period in which plaintiff claims she was disabled. (Tr. 244-248.)

Defendant next contends that Dr. James' opinion should not be considered that of a treating physician because his findings were not supported by acceptable clinical data and because he did not treat plaintiff during the period of inquiry. (Doc. 15 and 9.) That Dr. James began treating plaintiff in June of 2007 is not disputed by the parties.[12] In addition, the record does not show that Dr. James examined

---

[12]A discrepancy appears in the record regarding when Dr. James began treating plaintiff. "June 26, 2007" is indicated in type both on a letterhead from Dr. James' office listing answers to plaintiff's interrogatories, and on the interrogatories form proper. (Tr. 244-45.)
(continued...)

plaintiff more than once. (Tr. 243-50.) The record does not show that Dr. James treated plaintiff for foot pain, nor does it include any clinical data which Dr. James relied upon to assess plaintiff's abilities prior to December 31, 2006. An ALJ can accord a treating physician's opinion less weight if that physician has not treated the claimant for the particular disability in question, has seen the claimant only a limited number of times, or if the physician has not presented relevant evidence to support his opinion. 20 C.F.R. § 404.1527(d).

However, "'[s]ome medical evidence' must support the ALJ's determination of the claimant's RFC and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (quoting Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000)(per curiam); Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)). Once Dr. James' opinion is discounted, the problem defendant faces is that there is no evidence in the record concerning how plaintiff's impairments affected her ability to function during the period of inquiry to support the ALJ's RFC determination. The ALJ should have sought an opinion from plaintiff's treating physician, or ordered consultative examinations to assess plaintiff's RFC. See Nevland, 204 F.3d at 858 (where there is no medical evidence about how claimant's impairments affect his ability to function, ALJ should have sought opinion of treating physician, or alternatively, ordered consultative examinations).

Furthermore, though defendant argues the ALJ properly dismissed Dr. James' opinion, there were no other medical opinions or any other evidence on the record as developed by the ALJ that would undermine Dr. James' opinion concerning plaintiff's limitations during the period of inquiry. Therefore, the ALJ's decision to reject Dr. James' opinion lacks support in the record. Further inquiry into the basis for Dr. James' opinion may yield information that undermines or supports the

---

[12](...continued)
However, on the interrogatories form proper, "30 years" is handwritten, accompanied by additional unintelligible script, under the date that appears in type. A finding that Dr. James has treated plaintiff for thirty years would likely affect the treatment afforded Dr. James' medical opinion. See 20 C.F.R. § 404.1527(d).

ALJ's RFC determination. See Snead, 360 F.3d at 839 (where medical opinion is uncontroverted by other evidence but lacks clinical support in the record, ALJ should conduct inquiry to determine whether the opinion is supported by clinical evidence). Because evidence substantiating Dr. James' opinion might have altered the outcome of the ALJ's RFC determination, the undersigned concludes that the ALJ's failure to elicit it prejudiced plaintiff in her pursuit of benefits, requiring remand. Id. (remand required where potentially dispositive evidence is ignored); see also Highfill v. Bowen, 832 F.2d 112, 115 (8th Cir. 1987) (unfairness or prejudice resulting from an incomplete record – whether from lack of counsel or lack of diligence on the ALJ's part – requires remand).

Finally, plaintiff argues that the ALJ erred in determining she could return to her past relevant work as both a store cashier and a department store manager, and that his findings were conclusory. (Doc. 12 at 8, 10-11.) While the ALJ acknowledged plaintiff's position as a store cashier as past relevant work, he regarded only her position as a department store manager as substantial gainful activity. (Tr. 16.) As defendant asserts, the ALJ made specific findings based on the record concerning plaintiff's duties at the department store, and relied on the Dictionary of Occupational Titles to find that a retail store manager is work performed at the light exertional level, which plaintiff does not dispute. (Doc. 12 at 8; Doc. 15, 10-11; Tr. 16.); see 20 C.F.R. § 404.1560(b)(2)(permitting an ALJ to rely on the Dictionary of Occupational Titles). Light work, as defined by the Code of Federal Regulations, involves lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b). Accordingly, the ALJ regarded plaintiff's statements that she lifted objects of fifty pounds as a department manager at a department store as not credible. (Tr. 16.) Having previously determined plaintiff retained the RFC to perform light work, the ALJ found that plaintiff has not shown that she is unable to perform her past relevant work, and concluded she was not disabled. (Tr. 14, 16.)

Plaintiff's reliance on Groeper to argue that the ALJ's findings in this regard were conclusory, however, is based on the fact that the ALJ made no findings regarding plaintiff's physical capabilities due to her impairments, which, as already been mentioned above, is required for an RFC determination. (Doc. 12 at 10-11.); Groeper, 932 F.2d at 1238-39; see supra p. 11. The ALJ's finding that plaintiff can return to her past relevant work is dependent upon his determination of plaintiff's RFC, which the court has concluded is not supported by substantial evidence. See Ingram v. Chater, 107 F.3d 598, 604 (8th Cir. 1997) (conclusory determination that a claimant can perform past relevant work without requisite findings regarding claimant's physical limitations does not constitute substantial evidence that claimant is able to return to past relevant work).

## **VI. CONCLUSION**

For the reasons set forth above, the decision of the Commissioner of Social Security is remanded for further development of the record, a redetermination of plaintiff's residual functional capacity, the making of any other relevant findings, and a redetermination of whether or not plaintiff is disabled under the Social Security Act. An appropriate Order of Remand is issued herewith.

  /S/   David D. Noce    
**UNITED STATES MAGISTRATE JUDGE**

**Signed on October 25, 2010.**